IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID NORBERG, husband and wife; SHELLY NORBERG, husband and wife; and  DCN, INC., a Nebraska Corporation;<br><br>                Plaintiffs,<br><br>    vs.<br><br>COTTONWOOD NATURAL RESOURCES, LTD., an Oklahoma Limited Liability Company;<br><br>                Defendant. | 8:15CV71<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss (Filing No. 5) filed by Defendant Cottonwood Natural Resources, LTD. ("Cottonwood").  For the reasons discussed below, the Motion will be granted.

## FACTUAL BACKGROUND

The following is a summary of the allegations and factual assertions in the Plaintiffs' Complaint (Filing No. 1-2) which the Court accepts as true, for purposes of this Motion. The Court need not accept legal conclusions stated in the Complaint.

This case involves a mineral lease for property in Kimball County, Nebraska. Plaintiffs claim that Cottonwood failed to pay them an agreed-upon lease bonus in the amount of $144,000.00 in exchange for its lease of Plaintiffs' mineral interests.  Plaintiffs allege that Cottonwood solicited them in early 2013 to lease certain of their oil, gas, and mineral interests. (Filing No. 1-2, Compl. ¶ 6.) To that end, Cottonwood prepared a Letter Agreement (the "Letter Agreement"), and delivered it to Plaintiff David Norberg. (*Id.*; Filing No. 1-2, Compl., Ex. A at ECF 8.)  The terms of the Letter Agreement state

that Plaintiff David Norberg and Cottonwood would execute an additional Option to Exercise Oil and Gas Lease (the "Option Agreement"). (*Id.*) The Letter Agreement stated that Cottonwood would pay $100.00 per net mineral acre and provided for a 1/8th mineral owner's royalty with a primary term of four years. (*Id.*)  Plaintiffs Shelly Norberg and DCN, Inc., were not referenced in the Letter Agreement, and the Complaint did not contain any allegation that Cottonwood ever contracted with DCN, Inc., or Shelly Norberg. The Letter Agreement was dated March 20, 2013, and was executed by Cottonwood on March 18, 2013. (*Id.*)  Plaintiffs did not execute the Letter Agreement or the contemplated Option Agreement. (*Id.*)

The parties' negotiations continued for several months until a final contract, with different terms and parties, was entered into on June 24, 2013. The final contract was embodied in two mutually-executed documents, each dated June 24, 2013.  The first document was an Oil and Gas Lease between Norberg Farms, Inc. ("Norberg Farms") and Cottonwood (the "Lease"). (Filing No. 1-2, Compl. Ex. B at ECF 9-13.)  The executed Lease was for a three-year primary term.  (*Id.* at ECF 10-11.) The second document was a Bank Draft (the "Draft") between Cottonwood, as drawee, and Norberg Farms. (Filing No. 1-2, Compl. Ex. D at ECF 20.)  The terms of the Draft indicated that it would be paid "[o]n approval of Oil & Gas Lease described hereunder, [a]nd on approval of title to same by drawee not later than 120 banking days after arrival of this draft at collecting bank." (*Id.*) The Draft further indicated that "[i]n the event [it] is not paid within said time, the collecting bank shall return same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties herein." (*Id.*)

Cottonwood claims it released the Lease through a release document executed on October 14, 2014. (Filing No. 1-2, Compl. Ex. J at ECF 42.) Plaintiffs claim that Cottonwood breached the Letter Agreement and the Lease when it failed to pay the bonus payment called for in the Letter Agreement in the amount of $100.00 per net acre. Plaintiffs further assert that in reliance on the Lease, Plaintiffs expended a sum in excess of $15,000.00 taking all necessary actions to clear title defects and confirm marketable title. Plaintiffs also claim that by obtaining and recording the Lease, Cottonwood prevented Plaintiffs from entering into agreements and oil and gas leases with other interested parties and, as a result, Plaintiffs have suffered damages.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly,* 550 U.S. at 570).

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)) (internal quotation marks omitted). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

## DISCUSSION

Cottonwood argues that Plaintiffs' Complaint should be dismissed because their claims are based on Cottonwood's breach of an offer that Plaintiffs never accepted. "To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Linscott v. Shasteen*, 847 N.W.2d 283, 289 (Neb. 2014).[1] Under Nebraska law, to recover for breach of express contract, "the plaintiff must plead and prove the

---

[1] The parties agree that Nebraska law applies to this case.

4

existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Phipps v. Skyview Farms, Inc.,* 610 N.W.2d 723, 730 (Neb. 2000). "To establish an express contract under Nebraska law, a definite proposal and absolute and unconditional acceptance must exist." *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 950 (8th Cir. 2007) (citing *Viking Broad. Corp. v. Snell Publ'g Co.,* 497 N.W.2d 383, 385 (Neb. 1993)). "Additionally, a meeting of the minds must occur at every point, with nothing left open for future agreement." *Id.* (citations omitted). "An informal agreement may be binding, despite the parties' intentions to enter a formal agreement at a later time, only if the later, formal agreement contains no new provisions not contained in or inferred from the prior informal agreement." *Id.* 950-51 (citations omitted).

Plaintiffs do not deny that the Letter Agreement was an offer expressing Cottonwood's willingness to enter into a mineral rights lease. However, Plaintiffs allege no facts indicating they accepted the Letter Agreement nor do the allegations support an inference of acceptance. The Letter Agreement, addressed to David Norberg, was not signed by David Norberg or any of the Plaintiffs. (Filing No. 1-2 at ECF 8.) Further, the Complaint is devoid of any allegation that David Norberg manifested acceptance of the Letter Agreement. Rather, the Complaint demonstrates that negotiation in the months following transmittal of the Letter Agreement resulted in the Lease between different parties that contained different terms. Norberg Farms, Inc., became the contracting party rather than David Norberg and, among other differences, the four-year term contemplated in the Lease Agreement became a three-year term.

5

Plaintiffs nevertheless argue that they accepted the Letter Agreement even though they did not execute it, and that the Letter Agreement should be construed as a part of the final contract between the parties.  Plaintiffs assert that the absence of execution does not nullify the Letter Agreement because, in Nebraska, "signatures of the parties are not essential to establish a binding contract if manifestation of mutual assent is otherwise shown, unless there is a statute requiring a signature or an agreement by the parties that a contract shall not be binding until it is signed." *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 672 (Neb. 2011).

Plaintiffs argue that the parties impliedly incorporated the Letter Agreement into the parties' final contract because Plaintiffs relied on representations contained in the Letter Agreement. In Nebraska, "instruments made in reference to and as part of the same transaction are to be considered and construed together, and the fact that the instruments were made or dated at different times is not significant if they are related to and were part of the transaction."  *Norwest Corp. v. State, Dep't of Ins.*, 584, 571 N.W.2d 628, 634 (Neb. 1997).  Further, "A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances."  *Linscott v. Shasteen*, 847 N.W.2d 283, 289 (Neb. 2014).  For example, in *Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.*, 702 N.W.2d 355 (Neb. 2005), the Nebraska Supreme Court determined that three documents related to an agreement to sell agricultural equipment would be considered together because the documents each referenced the

6

other and "were all executed at the same time and in the same place, and shared parties in common." *Id.* at 369.

Unlike the documents in *Gary's Implement*, there is no allegation of a manifestation of mutual assent to include the Letter Agreement in the parties' contract. The Letter Agreement was never executed, so it cannot be said that they were executed at the same time or in the same place as the Lease and Bank Draft.  Further, the Letter Agreement and the Lease do not share parties in common and neither the Lease nor the Draft make any reference to the Letter Agreement.  As noted above, the executed Lease was for a three-year primary term, but the March Letter Agreement proposed a four-year lease which Plaintiffs never executed. There is no allegation that the "Option Agreement" referenced in the Letter Agreement ever materialized. The Lease and Bank Draft also contemplate consideration and royalties that differ from the Letter Agreement. In sum, the Lease and Bank Draft make no reference to the Letter Agreement, and were executed between different parties on different terms than the Letter Agreement nearly three months after the Letter Agreement was sent to David Norberg.  Accordingly, there is no indication from the allegations in the Complaint and the attached documents that the parties intended to include the Letter Agreement as a part of the same transaction as the Lease and Bank Draft.[2]

---

[2] Plaintiffs argue that the Bank Draft's no-liability clause does not negate the mutuality of obligation of the underlying Lease and Letter Agreement.  Plaintiffs cite the Eighth Circuit's decision in *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208 (8th Cir. 2012), in which the court considered the effect of an identical provision in a number of bank drafts on lease agreements that, by their plain terms, required the payment of a lease bonus. *Id.* at 1211. The court held that "[b]ecause [the defendant's] interpretation would impermissibly nullify the provisions of the lease agreements cited above when the no-liability clause can be read to harmonize with those same provisions, we conclude that the drafts' no-liability clause does not prevent enforcement of the lease agreements." *Id.* at 1215.  This case is distinguishable from *Smith* because the Lease does not require the payment of a lease bonus. The only

7

## CONCLUSION

For the reasons stated above, Plaintiffs have failed to allege that they accepted the offer contained within the Letter Agreement. Further, there is no allegation or indication that the parties intended to incorporate the Letter Agreement into their final contract. Accordingly, Plaintiffs' Complaint fails to state a claim for which relief can be granted.

IT IS ORDERED:

1. The Motion to Dismiss (Filing No. 5) filed by Defendant Cottonwood Natural Resources, LTD. is granted;

2. Plaintiffs' Complaint (Filing No. 1-2) is dismissed; and

3. A separate judgment will be entered.

Dated this 14th day of September, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

document that refers to a lease bonus is the Letter Agreement and, for the reasons stated above, the Plaintiffs have not alleged sufficient facts to demonstrate that the Letter Agreement was incorporated into the parties' contract.